[No. 3290.    Decided May 7, 1901.]

THE TIMES PRINTING COMPANY, *Respondent,* v. CITY OF
SEATTLE *et al., Appellants.*

APPEAL — STATEMENT OF FACTS — SERVICE ON ATTORNEY.

Under Bal. Code, § 4889, which provides the manner of mak-
ing service of notices necessary in the conduct of actions, and
declares that the services may be personal or by delivery to the
party or attorney on whom service is required to be made, or it

may be as follows: "If upon an attorney, it may be made during his absence from his office by leaving the papers with his clerk therein, or with a person having charge thereof; or, when there is no person in the office, by leaving it between the hours of six in the morning and nine in the evening in a conspicuous place in the office," service of a proposed statement of facts on appeal, made upon a clerk, is insufficient, when the attorney himself is present in the office.

CITY PRINTING — WRONGFUL AWARD — INJUNCTION — SUFFICIENCY OF COMPLAINT.

In an action of injunction to compel a city to award its public printing to plaintiff and to prohibit its publication in a newspaper to which the city had awarded the contract, the complaint states a cause of action when it alleges that the city called for bids for city printing under the terms of its charter which required the city council to designate as city official newspaper that newspaper whose owner offered the lowest proposals; that plaintiff filed a bid to do the city printing for 21 cents per inch for the first insertion, and 20 cents per inch for each subsequent insertion; that the bid accepted by the city from plaintiff's competitor was for 35 cents per inch for the first insertion, and 30 cents per inch for subsequent insertions, measurement to be by nonpareil type, matter set solid; that plaintiff's bid was rejected on the ground that it was indefinite, but plaintiff alleges it was made in view of a general existing custom that city printing was measured in nonpareil type, matter set solid, and that this fact was well known to the city council before it made its award; that the award to plaintiff's competitor will cost the city about $2,800 more than if the award should be made to plaintiff; that plaintiff is a taxpayer, and that the city council wantonly, with intent to defraud the plaintiff and all other taxpayers of said city, attempted to award said printing to plaintiff's competitor.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*Stratton & Powell* and *W. E. Humphrey,* for appellants.

*Bausman, Kelleher & Emory,* for respondent.

PER CURIAM.—The respondent, the Times Printing Company, brought this action against the Post-Intelli-

gencer Publishing Company, the city of Seattle, and the city councilmen thereof, and prayed for an injunction prohibiting the publication of the city printing in the Post-Intelligencer, a newspaper published by the Post-Intelligencer Publishing Company, and for a mandatory injunction compelling the city authorities to award the city printing to the respondent and to recognize respondent's paper as the city official newspaper for the year 1899. In the month of November, 1898, bids for the city printing of the city of Seattle for the year 1899 were regularly submitted in pursuance of a published notice calling for such bids. The bid of the Times Printing Company states the following terms, towit: "For each first insertion, twenty-one cents per inch. For each subsequent insertion, twenty cents per inch." The bid of the Post-Intelligencer Publishing Company states the following terms, towit: "For the first insertion, per inch, 35 cents. For each subsequent insertion, per inch, 30 cents. Measurement to be by nonpareil type, and matter set solid." The complaint shows that the charter of the city of Seattle provides that, when bids for the city printing have been submitted and opened, "thereupon the council shall, by resolution, announce the names of all parties whose proposals have been offered, and the terms of their proposals, respectively, and designate as city official newspaper that newspaper whose manager or owner has offered the lowest proposals," etc. Upon opening the aforesaid bids, the city council, by resolution, declared the bid of the Post-Intelligencer Publishing Company to be the lowest one, and designated the Post-Intelligencer as the city official newspaper for the year 1899. This action of the council was based upon the fact that the bid of the Times Printing Company did not designate the method of measurement or the kind of type with which it proposed to do the

printing, whereas that of the Post-Intelligencer Publishing Company specified, "Measurement to be by nonpareil type, and matter set solid." From this the council determined that the bid of the Times Printing Company was indefinite and that the other was the lower bid. The complaint contains the following, among other averments:

"That under the general custom and usage well known throughout the United States, and the state of Washington, and the city of Seattle in particular, there is now, and was at all the times herein mentioned, a general customary standard of measurement in general use for all legal and official advertisements in daily newspapers throughout the United States, the state of Washington, and particularly the said city of Seattle; that said general, customary standard of measurement is in nonpareil type, in matter set solid in columns two and one-sixth inches wide in length of line of matter and two and one-quarter inches between column rules, there being in each inch of said legal and official advertisements twelve lines. That at all the times herein mentioned, and at the time of the submission of said bids to the said city council, said general custom and usage was well known to all the defendants herein. That the plaintiff herein, in filing with the said city clerk aforesaid its said proposals, had in mind said general custom and usage, and that said proposal was made with the understanding on the part of plaintiff that said general customary standard of measurement, to-wit, nonpareil type, in matter set solid, should be considered as a part of its bid. That when said bids were opened by said city council they were held under consideration one week without further acting thereon, and while said bids were so held under consideration, said plaintiff made known to said city of Seattle, and to said city council, and to each and all the members thereof, that said general customary standard of measurement existed, and that plaintiff desired that its said proposal should be considered in the light of said general customary standard of measurement; and made known to said city council, and to each and all the members thereof, that it desired to be understood by its said

proposal that it intended to use said general customary standard of measurement, towit, nonpareil type, and matter set solid; and made known to said city council then and there that it desired a resolution to be adopted by the said city council designating the newspaper of plaintiff as the city official newspaper for the fiscal year 1899, and to have incorporated in the said resolution the said general customary standard of measurement, towit, nonpareil type, in matter set solid."

It is further averred that the respondent is a taxpayer of the city of Seattle, and pays each year several hundred dollars in general taxes for municipal purposes in the city of Seattle and county of King; that, if its bid should be accepted, the cost to the city for its official printing would be about $5,000; whereas if the bid of the Post-Intelligencer Publishing Company should be accepted it would cost the city at least $7,800. That these facts were well known to each member of the city council, but, notwithstanding the same, the council wantonly, maliciously, fraudulently, and with the intent to defraud the plaintiff and all other taxpayers of said city out of at least the sum of $2,800, attempted to award said printing to the Post-Intelligencer Publishing Company by adopting a resolution of the purport above mentioned. A trial was had, which resulted in a decree granting to plaintiff below a permanent injunction as prayed in the complaint, the purport of which was first hereinbefore mentioned. The defendants below have appealed from said judgment.

Respondent moves to strike the statement of facts upon the following grounds:

"(a) No copy of the statement of facts appears to have been served upon this respondent after the original was filed in the cause. (b) There does not appear to have been any service at all of any copy of the statement of facts upon this respondent. (c) That there has been no written notice, nor any notice at all, served upon this respond-

ent of the filing of the statement of facts in the lower court. (d) Because the statement of facts was certified by the judge without notice to this respondent and without any proof being filed of the service of the statement of facts upon this respondent. (e) That said statement was signed by the judge without any proof being filed that no amendments had been proposed by this respondent."

Some of the grounds urged upon the motion would be applicable under a former statute, as would also the decisions of this court cited in support thereof; but since the passage of the statute of 1893, as found embodied in Bal. Code, § 5058, they do not apply. However, the grounds noted under "a" and "b," as above set forth, present a question that must be passed upon. The original record, as brought to this court, contained no proof whatever that the statement of facts had ever been served upon respondent. The affidavit of one Ralph D. Nichols is, however, brought here in a supplemental record, and states the following facts:

"That affiant is an assistant in the law office of Stratton & Powell, attorneys for the defendant Post-Intelligencer Publishing Company above named; that on the 5th day of May, 1899, affiant, for Stratton & Powell, as attorneys for the said defendant Post-Intelligencer Publishing Company, filed with the clerk of the above entitled court, the proposed statement of facts in the above entitled cause, and that subsequent to the filing of the same, and upon the same day, affiant served the same upon Bausman, Kelleher & Emory, attorneys for the above named plaintiff, by leaving a true copy at their office on the sixth floor of the Bailey Building in the city of Seattle, with A. F. Bunch, a clerk of said firm, then employed in said office, and in the presence of Frederick Bausman, a member of said firm."

This proof, which is now submitted by supplemental record, shows that any service which may have been made was made by leaving a copy of the proposed statement

with a clerk of the firm of attorneys who represented respondent, but *in the presence of a member of the firm.* Section 4889, Bal. Code, provides the following method for such service:

"The services may be personal or by delivery to the party or attorney on whom service is required to be made, or it may be as follows: If upon an attorney, it may be made during his absence from his office by leaving the papers with his clerk therein, or with a person having charge thereof."

It will thus be seen that when an attorney is in his office the notice or paper *must be left with him;* and it is only in the event of his absence from his office that it may be left with a clerk. The affidavit states that a member of the firm of attorneys was present, which being true, the only effective service that could be made under the statute above quoted was by leaving the copy with him. It is not stated in the affidavit that the member of the firm who was present even had knowledge that the copy was left with the clerk. But, in any event, the attorney is entitled to have it served upon himself when he is present in his office. We must apply the statute as we find it. It is plain and unambiguous, and we do not feel authorized to give it any other interpretation than that which must be gathered from a strict reading thereof. The motion to strike the statement of facts must, therefore, be granted.

The remaining question is, Does the complaint state a cause of action? A demurrer was interposed to the original complaint, which was by the court overruled. A supplemental complaint was also filed, which contains the substance of the recitals set forth in the original complaint, together with others. No demurrer appears to have been filed as against the supplemental complaint under which the cause appears to have been tried. There is, therefore, no assignment of error upon demurrer as to

the supplemental complaint. The second assignment of error, however, is that the court erred in admitting any evidence at the trial. This challenges the sufficiency of the supplemental complaint in this court. The more material averments of the supplemental complaint have been hereinbefore mentioned, and an examination of the whole complaint satisfies us that it states a cause of action. The findings of the court fully sustain the averments of the complaint.

The judgment must therefore be affirmed.